J-S57009-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH MARCHESANO | : | |
| | : | |
| Appellant | : | No. 2394 EDA 2017 |

Appeal from the PCRA Order July 11, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0307911-2005

BEFORE: PANELLA, J., PLATT[*], J., and STRASSBURGER[*], J.

MEMORANDUM BY PANELLA, J. **FILED DECEMBER 07, 2018**

Joseph Marchesano appeals from the order entered in the Philadelphia County Court of Common Pleas dismissing his first petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, without a hearing. We affirm.

Due to our disposition of this matter, a detailed recitation of the factual and procedural history of this case is unnecessary. Briefly, in 2009, Appellant was convicted of attempted murder causing serious bodily injury, possessing an instrument of crime, and carrying a firearm while prohibited after he shot and stabbed Christopher Massimino on January 23, 2005. A panel of this Court affirmed his judgment of sentence. **See Commonwealth v. Marchesano**,

_____

[*] Retired Senior Judge assigned to the Superior Court.

No. 1386 EDA 2009 (Pa. Super., filed Oct. 7, 2011) (unpublished memorandum). Appellant did not seek further direct review.

Appellant filed his first *pro se* PCRA petition on April 2, 2012. The PCRA court appointed counsel who later filed an amended petition. The PCRA court issued notice of its intent to dismiss, and ultimately dismissed Appellant's petition without a hearing. This timely appeal follows.

On appeal, Appellant challenges trial counsel's failure to: (1) investigate and present witnesses at trial; (2) preserve a challenge to the weight of the evidence for appeal; (3) properly present Appellant's Rule 600 claim on appeal; and (4) argue that the trial court precluded Appellant from establishing the full extent of Massimino's drug addiction at trial. Appellant contends the PCRA court erred in dismissing his petition without an evidentiary hearing, during which Appellant maintains he would have proven the above-listed claims and been entitled to a new trial.

"On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." ***Commonwealth v. Edmiston***, 65 A.3d 339, 345 (Pa. 2013) (citation omitted). On questions of law, our scope of review is *de novo*. ***See id***.

"The right to an evidentiary hearing on a post-conviction petition is not absolute." ***Commonwealth v. Walls***, 993 A.2d 289, 295 (Pa. Super. 2010) (citations and brackets omitted). A PCRA court may decline to hold a hearing where it can determine, from the record, that there are no genuine issues of

material fact. *See Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008). "With respect to the PCRA court's decision to deny a request for an evidentiary hearing … such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion." *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015) (citation omitted).

The PCRA court, in its opinion filed on November 13, 2017, has methodically reviewed Appellant's claims and disposed of his arguments on the merits. We have reviewed the parties' briefs, the relevant law, the certified record, and the well-written opinion of the Honorable William J. Mazzola. Judge Mazzola's opinion comprehensively disposes of Appellant's arguments with appropriate references to the record and case law, and without legal error. Accordingly, we affirm the PCRA court's order based on Judge Mazzola's opinion filed November 13, 2017.

Order affirmed.

Judge Platt joins the memorandum.

Judge Strassburger concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/7/18

**Received**

NOV 13 2017

Office of Judicial Records
Appeals/Post Trial

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL SECTION

COMMONWEALTH OF PENNSYLVANIA     :     CP-51-CR-0307911-2005

            v.                           :

                                        :     **SUPERIOR COURT**

JOSEPH MARCHESANO                :     **NO. 2394 EDA 2017**

**OPINION PURSUANT TO PA.R.A.P. 1925(a)**

MAZZOLA, WILLIAM, J.                      NOVEMBER    8    , 2017

## I.     INTRODUCTION

This is an appeal from the dismissal of the defendant Joseph Marchesano's petition for

relief under the Post Conviction Relief Act, *42 Pa.C.S. § 9541 et seq.,* hereinafter the *PCRA.*

The issues as stated in the *Pa.R.A.P. 1925(b) Statement of Errors* are:

> 1. The court was in error in denying the amended PCRA [*sic*] due to the
> ineffectiveness of counsel in failing to properly represent defendant. The issues
> are explained in detail in the amended PCRA [*sic*] filed by counsel and include
> the following:
>
> • Trial counsel was ineffective for failing to call witnesses[,]
> • ... file a motion that the verdict was against the weight of the evidence[, and]
> • ... properly argue the Rule 600 violation.
> • Appellate counsel was ineffective in representation.
>
> 2. The court was in error for failing to grant an evidentiary hearing.

**STATEMENT OF MATTERS COMPLAINED OF ON APPEAL**, September 13, 2017. As

will be shown, those issues were not really "explained in detail" in counsel's submissions, their

having been limited to very few references to any supporting facts either on or off the record.

The procedural and factual histories of the case were thoroughly set forth in the trial

court's *R. 1925(a)* opinion of February 2, 2011, submitted in the defendant's direct appeal.[1] In

its opinion affirming the judgment, this Court merely noted the convictions and sentences and

---

[1] *Commonwealth v. Marchesano, 37 A.3d 1225 (Pa.Super. 2011), unpublished memorandum, No. 1386 EDA 2009.*

1

cited the first nine pages of the trial court's opinion as a fuller description of those histories, only specifically citing to the record when necessary to address a particular issue. They need only be briefly summarized for present purposes without the need to cite to the record except where the court needs to note facts that were not cited therein. The defendant was convicted of attempted murder causing serious bodily injury and possession of an instrument of crime (POIC) and a firearm while prohibited (POF).[2] He was sentenced to consecutive terms of thirty (30) to sixty (60) years', five (5) to ten (10) years' and two and a half (2½) to five (5) years' incarceration respectively on the attempted murder, POF and POIC (37½ to 75).

The evidence showed that the defendant had shot and stabbed the complaining witness, Christopher Massimino, while he was at the defendant's house in the early morning hours of January 23, 2005. The assault was the apparent resurgence of a dispute that had occurred during the previous early morning at the house over whether the victim had taken twenty dollars from the defendant which included his having strip searched the victim at gunpoint. He and the victim, who was homeless, were acquainted, as the latter termed it "[for] a couple months", the defendant having had him at his home on prior occasions, usually to partake of illicit drugs and sometimes to stay the night. On the night of the assault, the defendant came upon the victim, the prosecution claimed purposefully, apologized to him for the dispute and invited him to ride with him to his house, ostensibly to do some drugs. After the victim bought some drugs from someone he had earlier arranged to meet he did so, where, at some point, a onetime codefendant, Alex Giangrante[3], a female acquaintance of the defendant with whom the victim was familiar, and two unidentified African American males who the victim did not know, were also present. After the victim was assaulted, he fled and was chased by the defendants and the unidentified

---

[2] *18 Pa.C.S. §§ 901(a) & 2502, 907(a) & 6105(a)(1)*. The last was entered by the court at sentencing pursuant to the Commonwealth's request when it submitted the defendant's prior felony convictions to establish a third strike.
[3] His name appears as Giangran on the docket in his case. CP-51-CR-0307912-2005.

2

males but managed to escape. Other details will be noted as relevant to the present claims.

## II.    PROCEDURAL HISTORY

Following the defendant's arrest on the day of the assault, the court had set bail at five hundred thousand dollars and prior to trial there were a number of petitions, both counseled and *pro se*, by which the defendant attempted to have bail reduced or to be released pursuant to *Pa.R.Crim.P. 600* or by *Habeas Corpus* which ultimately resulted in him being released to house arrest with electronic monitoring in May of 2007, and permitted to attend his employment the following August.[4] In the meantime, in April of 2007, one of the times the case was called for trial, the Commonwealth moved to proceed by using the victim's preliminary hearing testimony, it having been unable to locate him, which the court denied. It sought reconsideration and appealed that denial but discontinued the latter when he was located.[5] The trial court denied the defendant's last *R. 600* motion on the first day of trial, June 3, 2008, and his motion for acquittal on the attempted murder on the last, June 6th. Both motions were presented by trial counsel, the latter having been based on the claim that the Commonwealth had failed to prove a serious bodily injury. On November 20, 2008, trial counsel filed a motion for extraordinary relief, alleging court error in denying *R. 600* relief, counsel ineffectiveness (his own) in failing to cross examine a police witness about inconsistencies between the officer's initial report and her trial testimony, and that the evidence was insufficient to convict and the verdict was against the weight of the evidence. The docket incorrectly lists it as a Post-Sentence Motion but it was filed prior to sentencing. It was denied on January 21, 2009. As noted, the present *PCRA* claims include counsel ineffectiveness for failing to file a motion challenging the weight of the evidence but, since the record is devoid of the bases for that motion or the reasons for the court having

---

[4] The defendant had filed an appeal *pro se* to this Court from the denial of a *Habeas* petition at 3194 EDA 2005 and a petition for review at 135 EDM 2005. The latter was denied and the former dismissed as moot on March 1, 2006.
[5] 1457 EDA 2007.

3

denied it, in order to reach that issue presently, the court will assume that the intended claim was that prior counsel rendered ineffective assistance in not properly presenting the claim or failing to include it in the direct appeal. The defendant was sentenced on April 16, 2009.

The docket indicates that he filed a "Motion for Reconsideration", which turned out not to be the case, and a "Motion for New Counselor" *pro se* on April 23, 2009, and he filed the direct appeal *pro se* on May 6th. In consideration of the latter motion, another attorney was appointed to proceed with the appeal. After some confusion was clarified as to whether a motion for reconsideration was pending and the proper submission of a *R. 1925(b) Statement* in the trial court, this Court addressed the issues raised therein in its opinion of October 7, 2011.[6] As numbered and presented in the defendant's brief, the Court described the issues as whether the trial court erred in (1) denying his last *R. 600* motion, precluding the introduction of evidence of (2) "the general pervasiveness" of the victim/complaining witness's drug use and (3) his failure to appear at the codefendant's trial, which resulted in the charges against him being dismissed, and (5) in applying the third strike statute, and (4) whether the evidence was insufficient to convict. This Court agreed with the trial court that issues (1), (2), (3) and (5) were without merit and issue (4) was waived as being too vaguely presented in his *1925(b) Statement*, citing a number of cases in which the courts held that a proper *Statement* was required to include the specification of the element or elements of the crimes which the defendant believed were not sufficiently proved. The defendant did not seek further review. The present proceedings were initiated by the filing of a timely petition *pro se* on April 2, 2012. Present counsel was appointed in March of 2013 and filed the amended petition on January 27, 2014. The Commonwealth filed a motion to dismiss on December 6, 2016, and the court granted it at a hearing on June 8, 2017, issued a notice of intent to dismiss as lacking merit pursuant to *Pa.R.Crim.P. 907* on June 13th,

---

[6] Trial counsel also filed a direct appeal at 1415 EDA 2009 on May 11th which was dismissed as duplicative.

4

and formally dismissed the petition on July 12th. *PCRA* counsel filed this appeal on the 19th.

## III.    UNDERLYING CLAIMS OF INEFFRECTIVE ASSISTANCE

In the body of the amended petition, counsel set forth the procedural history of the case, restated the claims presented in the *pro se* petition as (1) appellate counsel ineffectiveness in failing to properly argue a *R. 600* violation "and (2) for improperly failing to make a motion for a new trial based on insufficient evidence", (3) trial counsel ineffectiveness "for failing to produce eye-witness testimony of two individuals that would have exonerated the Petitioner" and (4) court error in preventing the introduction of evidence of bias on the part of the complaining witness, followed by a rewording of those claims, except for the insufficiency claim, and the addition of the weight claim as they are presented in the *1925(b) Statement*.[7] The purported detailed explanations referred to in the latter were actually contained in a memorandum of law in support of the amended petition. For simplicity's sake the court will refer to all the submissions as simply the petition. The first twelve pages of the memo consisted of an apparently *verbatim* repetition of the evidence presented at trial set forth by the trial court in its *R. 1925(a)* opinion, a repetition of the procedural history as presented in the petition, and a list of the issues as they are presented in paragraph (1) of the *Statement*. The remainder of it consists solely of general boiler plate renditions of some of the general law governing *PCRA* claimants' burdens of pleading, proof and persuasion and the criteria the courts' must employ in evaluating and analyzing the claims presented, a description of the underlying claims almost as brief as they were listed in the petition and *Statement*, followed by bald assertions that the defendant has met all of those legal

---

[7] The defendant also filed an amended *PCRA* petition *pro se* on July 22, 2015, claiming that the statute by which he was sentenced as a third striker was unconstitutional. The court need not address that issue because it was not raised in the amended petition, which superseded the *pro se* claims that were not reiterated therein (*Commonwealth v. Renchenski, 616 Pa. 608, 52 A.3d 251 (2012); Commonwealth v. Padden, 2001 PA Super 246, 783 A.2d 299 (2001); Commonwealth v. Baumhammers, 625 Pa. 354, 92 A.3d 708 (2014)*), or in the *1925(b) Statement*. In addition, the trial court addressed the defendant's challenges to his third strike sentence, including the statute's constitutionality, in its opinion in the direct appeal (pp. 15-20) since they were raised in the *1925(b) Statement* filed therein. In the appeal, the defendant limited the claim to whether the court properly applied the statute.

and factual criteria entitling him to the requested relief, which were "release the Petitioner from custody; dismiss and discharge this case; grant [him] an evidentiary hearing as he has presented a claim of arguable merit; reverse [his] sentence; and/or grant any other relief deemed just and appropriate." It contains only scanty, and for the most part deceptively phrased, references to totally insignificant non-exculpatory facts of record. The only nonrecord facts presented were the names and addresses of the purported witnesses trial counsel allegedly failed to interview and call at trial with an even briefer rendition of their purported testimony. Other than that, there is a complete absence of any discussion of the veracity or credibility, or lack thereof, of the actual directly relevant and incriminating evidence, or references to any other nonrecord evidence, and the only indication of what the allegedly exculpatory witnesses would have had to say is a totally unsupported bald allegation by counsel that they saw the codefendant with the gun, only presumably meaning the one with which the defendant was alleged, and proven, to have used to shoot the victim. Only by reference to other evidence can it be clearly deduced that those observations could only have occurred a significant amount of time prior to the assault, which occurred in a different part of the house and could not possibly have been observed by the witnesses. Appended to the memo were copies of what appeared to be two letters from the defendant to present counsel. In one dated January 14, 2014, he stated that they would testify that "they seen [*sic*] Alex with the gun at my dinner table prior to the 3 of us going in the basement." He did not indicate to whom he was referring by "the 3 of us." In an undated one he described those witnesses as being "the two Black guys", presumably whom the victim described as being present at the defendant's home the night of the assault, who "were in the county jail with [him] on unrelated charges" (while he was awaiting trial in this case) and, somewhat surprisingly, that "I told them & my lawyer as to what they will testify to." *Sic.* His attempt to demonstrate the exculpatory nature of their purported testimony reads "I did not obtain a

6

[affidavit] From them. But the verdict, speaks for itself, I was found guilty of shooting Ch[r]is, acquitted of stabbin[g] him." It is true that the jury only found that he used a gun, but the evidence that he also stabbed the victim was equally compelling.

The court could justify its rejection of that claim without a hearing on the basis that the petition did not include a sworn certification as to each intended witness stating their names, addresses, dates of birth and the substance of their purported testimony or any documents material thereto, the failure to supply which rendered their proposed testimony inadmissible pursuant to *42 Pa.C.S. § 9545(d)(1)* and, among many others, the ruling in *Commonwealth v. (Gregory) Brown, 2001 Pa.Super. 18, 767 A.2d 576 (2001)*. The court need not dwell on that failing, however, because counsel did provide that information, albeit scantily and without their dates of birth, in the memo and because it is patently obvious that, even had the certification been supplied, that claim is, as are all the others, completely devoid of merit. Counsel actually argued that a petitioner was not required to demonstrate that their purported testimony would have been exculpatory; he actually claimed that the mere facts that he supplied their names and addresses to his trial counsel and that counsel failed to interview them entitles him to a new trial. That is, of course, a blatant mischaracterization of the requirements that must be met in order to show *prima facie* entitlement to *PCRA* relief on the issue of failing to interview or call witnesses.

The further descriptions that counsel claimed were in the amended petition were preceded by a rather selective partial citation of judicial authority regarding the criteria to employ in evaluating the pleading and proof of ineffective assistance of counsel claims in general which would have more appropriately been cited in much further detail. Counsel did not cite or discuss any of the *PCRA* requirements that must be met in order to be granted an evidentiary hearing. Nor did he discuss, or even mention, the alleged bias on the part of the complaining witness or the failure to challenge the sufficiency of the evidence claims at all, and since they were also not

7

included in the *1925(b) Statement*, they can, therefore, be deemed waived for the same reason the latter claim was deemed waived in the direct appeal.[8]

The remaining allegations are brought forth as claims of ineffective assistance of trial counsel. The standard for reviewing an ineffectiveness claim is well settled:

> The threshold inquiry in ineffectiveness of counsel claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be ineffective for failing to assert a meritless claim. Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective. If we determine that there was no reasonable basis for counsel's chosen course then the accused must demonstrate that counsel's ineffectiveness worked to his prejudice. The burden of establishing counsel's ineffectiveness is on the appellant because counsel's stewardship of the trial is presumptively effective. [citations omitted].

*Commonwealth v. Weiss, 530 Pa. 1, 5–6, 606 A.2d 439, 441–42 (1992).* In assessing a claim of ineffectiveness, where it is clear that Appellant has failed to meet the prejudice prong, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met. *Commonwealth v. Travaglia, 541 Pa. 108, 661 A.2d 352 (1995).*

*Commonwealth v. Paolello, 542 Pa. 47, 665 A.2d 439, 454 (1995)* (footnote omitted). The areas of inquiry quoted above are frequently referred to as the three prong *Pierce* test, the key element to explore in this case being the last, the prejudice prong. "*Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).* A petitioner establishes prejudice when he demonstrates 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' *Id. at 694, 104 S.Ct. 2052; see also Commonwealth v. Mallory, 596 Pa. 172, 941 A.2d 686, 702–04 (2008), cert. denied, — U.S. —, 129 S.Ct. 257, 172 L.Ed.2d 146 (2008)* ('result of the proceeding' is stage of proceeding at which

---

[8] The latter seems to be a curious omission in view of the fact that the sufficiency claim was found to have been waived. This Court noted, however, that it agreed with the trial court's assessment that the evidence was sufficient.

8

error occurred)." *Commonwealth v. Johnson, 600 Pa. 329, 966 A.2d 523, 533 (2009).* That required demonstration has also been characterized as showing that the underlying claims have merit. The part of the *Paolello* decision presented in the memo was a truncated rendition of the quotation from *Weiss* followed by an even more abbreviated rendition of the *Strickland* rule, which is given a much more thorough treatment below, as simply: "Therefore, in this case, if Petitioner can show that counsel's error was serious as [*sic*] to deprive him of a fair trial, then counsel will be deemed ineffective and Petitioner is entitled to a new trial." The court addresses the claims as they were reordered, relabeled and purportedly further explained in the memo.

## A. TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO INVESTIGATE WITNESSES.

The purported further explanation of this claim consists entirely of the allegations that trial counsel failed to contact and interview two named "relevant witnesses" whose identities the defendant claimed he provided to him who were "crucial to his defense", and who would have testified "that they saw [the codefendant, who was either a distant cousin or the husband of a distant cousin of the victim,] with the gun[, again, only presumably the one with which the defendant was alleged to have shot the victim,] at Petitioner's dinner table[, which was on the first floor of the house, as opposed to the basement,] prior to the three of them[, being, the defendant, the victim and the codefendant,] going in the basement [where the shooting and stabbing occurred]." The bracketed data are facts that were established at trial that present counsel neglected to mention. Counsel also ignored the fact that the victim made it abundantly clear that he was sitting on a couch, the codefendant was standing in front of him and the defendant was behind the couch, to the victim's left and out of his line of sight, when he was shot in the left side of the back of his head. Counsel's abridged rendition of the purportedly exculpating witnesses' involvement in the events was followed solely by the allegation that

9

"Petitioner asserts that his counsel told him he would not use the witnesses because they were in jail even though everyone involved in the case was in jail." The only legal argument specifically directed to those factual allegations was that, even though "The Commonwealth will likely argue that the testimony of the witness [*sic*] is irrelevant, untruthful and does not rebut [its] case ... that would be for the trier of fact to decide after hearing the testimony." By referring to "the trier of fact" counsel implied that the defendant, by simply identifying the witnesses and claiming that they would say that they saw the codefendant with one of the weapons used to assault the victim (at an unspecified time before it occurred, and as if it would have been impossible for him to have handed it to the defendant), was entitled to have a jury determine whether that testimony is relevant, truthful and would carry substantial weight against the Commonwealth's evidence. That is a blatant misrepresentation of a *PCRA* petitioner's burden of pleading. Counsel made no attempt to describe how that alleged testimony would have been in anyway exculpatory when compared with the really relevant and powerfully incriminating evidence that was adduced at trial as demonstrated by the trial court's previous rendition and analysis of it. That omission is particularly telling in that, not only were the purported witnesses the two unidentified black males described by the victim at trial as being present at the defendant's home on the night of the assault, who did not go down to the basement where the assault took place, he also testified that they actually tried to prevent him from escaping from the defendant's house after he was shot.

Aside from the fact that *Paolello* had nothing to do with a claimed failure to interview and call witnesses, the cases that counsel did cite and claimed dealt with facts analogous to his description of the purported witnesses' testimony actually make abundantly clear his complete failure to demonstrate any merit whatsoever to this underlying claim. Those cases also contain further elucidations of a *PCRA* petitioner's burdens of pleading and proof in a failure to produce a witness claim, much of which criteria counsel also neglected to mention.

10

Appealing from the judgment of sentence entered February 6, 1991, in the Court of Common Pleas of Philadelphia County, Angelo Nock raises four issues, one of which we will address: whether trial counsel was ineffective for failing to investigate, interview, and call to testify an eyewitness to the murder for which appellant was convicted. After reviewing the record and carefully considering the parties' arguments, we vacate the judgment of sentence and remand for a new trial.

\* \* \*

Appellant contends that trial counsel was ineffective for failing to investigate, interview, and call to testify an eyewitness to the murder, Leonard Rogers. In order to prevail on an ineffectiveness claim, appellant must show that

> by act or omission counsel was arguably ineffective; counsel's act or omission could not have had a reasonable basis designed to effectuate appellant's interests; and appellant was prejudiced by the act or omission in that but for the arguably ineffective act or omission there is a reasonable probability that the result would have been different.... To obtain relief on this claim[, that is, that counsel was ineffective for failing to interview or present a witness,] appellant is required to establish that: 1) the witness existed; 2) the witness was available; 3) counsel was informed of the existence of the witness or counsel should otherwise have known of him; 4) the witness was prepared to cooperate and testify for appellant at trial; and 5) the absence of the testimony prejudiced appellant so as to deny him a fair trial.

*Commonwealth v. Petras, 368 Pa.Super. 372, 376-77, 534 A.2d 483, 485 (1987)* (citations and footnote omitted). For the following reasons, we conclude that appellant has met this burden.

\* \* \*

After considering the statement dated October 23 and the transcript of Rogers' grand jury testimony, trial counsel decided not to call Rogers as a defense witness. Counsel based this decision on his belief that because Brown's testimony, as well as Moore's testimony, was so inconsistent and incredible, the Commonwealth did not have sufficient evidence to sustain a conviction. Trial counsel also stated that he "decided that [he] had done enough work to win the case."

After reviewing this testimony, we conclude that trial counsel's decision not to interview Rogers or call him as a witness was not reasonable. The outcome of this case hinged on the testimony of the Commonwealth's eyewitness. "[W]hen the Commonwealth's case is thus dependent upon the credibility of its witnesses, trial counsel must explore the testimony of any witness ... whose testimony might cast doubt on the testimony of the Commonwealth's witnesses." *Commonwealth v. McCaskill, 321 Pa.Super. 266, 276, 468 A.2d 472, 477 (1983).* Rogers was also an eyewitness to the shooting and he would have provided information which was exculpatory to appellant. As trial counsel asserted, the testimony of the Commonwealth's witnesses was inconsistent; it was not incredible, however. In fact, trial counsel did not demur to the charges at the conclusion of the Commonwealth's case, and he conceded during his closing argument that the

11

evidence was sufficient to sustain a conviction. Nonetheless, counsel chose not to present exculpatory evidence on appellant's behalf. This choice did not have a reasonable basis designed to effectuate his client's interests.

Although counsel's decision was not reasonable, we must also determine whether appellant was prejudiced by the decision. We disagree with the trial court's conclusion that appellant was not prejudiced by counsel's omission.

To prove prejudice in the context of an ineffectiveness claim, "[a]n appellant must show that the error was 'so serious as to deprive [him or her] of a fair trial, a trial whose result was reliable.' " *Commonwealth v. Morocco, 375 Pa.Super. 367, 371, 544 A.2d 965, 967 (1988)* (quoting *Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063-64, 80 L.Ed.2d 674 (1984))*, *allocatur denied, 520 Pa. 615, 554 A.2d 508 (1989)*. We cannot say that, under the circumstances of this case, counsel's failure to call Rogers did not deprive appellant of a fair trial. Brown's various accounts of appellant's role in the shooting were inconsistent and unclear. At different times, he stated that appellant did have a gun, that he did not know if appellant had a gun, that appellant was firing his gun, that Reed was the only person firing a gun. Rogers' testimony that appellant did not have a gun could have provided the reasonable doubt necessary for a more favorable outcome to appellant.

This conclusion is not altered by the fact that the trial judge heard the evidence and adjudicated appellant's guilt in this case. The same judge presided over the post-sentencing hearing and heard Rogers' testimony as well as the testimony concerning the statements he made to the police. After hearing this testimony, the trial judge concluded that "there is no reasonable possibility that the result of the trial would have been different had Rogers been called to testify." To the extent that this was a determination that appellant was not prejudiced by counsel's failure to call the witness, we have already discussed our disagreement.

The Commonwealth sets forth an additional argument in support of its contention that because the fact-finder, i.e., the trial judge, determined that there is no reasonable probability of a different outcome, appellant was not prejudiced by counsel's failure to present Rogers as a witness. The Commonwealth argues that "by permitting Rodgers to testify, Judge Savitt, in effect, reopened the trial and admitted additional evidence for the defense. He concluded, however, that Rodgers' testimony did not create a reasonable doubt as to defendant's guilt." For the following reasons, we disagree.

First, the reasonable probability standard is applied to determine whether a defendant is entitled to a new trial, at which the fact-finder must consider whether guilt has been proven beyond a reasonable doubt. A defendant's burden of proving that there is a reasonable probability that a missing witness's testimony would have changed the outcome of the trial cannot be equated with, or substituted for, the Commonwealth's burden of proving the defendant's guilt beyond a reasonable doubt. If this testimony had been admitted at trial, the judge, as fact-finder, would have had to determine whether it cast a reasonable doubt on appellant's guilt. At the post-trial hearing, the judge had to determine whether a

12

reasonable probability existed that the outcome of the case would have been different. These inquiries are not interchangeable.

*Commonwealth v. Nock, 414 Pa.Super. 326, 606 A.2d 1380, 1380, 1381, 1382–83 (1992)* (citations to record omitted), *appeal denied, 535 Pa. 656, 634 A.2d 219 (1993).*[9] The Court did not mention, but it can be safely assumed, that the reason that Nock was given a hearing at which he produced the witness and his trial attorney was because he had pled in his motion that they would say what they subsequently did testify to. Counsel's claim here that what occurred in Nock's case "was exactly the case here" is brazenly fallacious.

> We turn first to appellant's argument that the PCRA court erred in not conducting an evidentiary hearing. We find no error here. There is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary. *Commonwealth v. Barbosa, 819 A.2d 81 (Pa.Super. 2003).* All of appellant's PCRA claims pertained to ineffective assistance of counsel. Since such a claim must meet all three prongs of the test for ineffectiveness, if the court can determine without an evidentiary hearing that one of the prongs cannot be met, then no purpose would be advanced by holding an evidentiary hearing. Such is the case instantly.

*Commonwealth v. Jones, 2008 PA Super 16, 942 A.2d 903, 906 (2008), appeal denied, 598 Pa. 764, 956 A.2d 433 (2008).* Counsel's reliance on the only other case he cited was equally misplaced. The facts in it were not only distinguishable, they were unavailing to the claimant. "Accordingly, we find that although Lentz' testimony may have been helpful to Stilley's case, in light of the fact that the same information was elicited through cross-examination and other testimonial evidence, we cannot say that the defendant was prejudiced by counsel's actions." *Commonwealth v. Stilley, 455 Pa. Super. 543, 689 A.2d 242, 254 (1997).* Counsel made absolutely no attempt to demonstrate how the purported testimony would have been helpful. Moreover, if those two had actually seen the codefendant with the gun, the victim probably would have also and would certainly have mentioned that fact at trial.

---

[9] It's of note here that this Judge also presided over this defendant's trial.

13

In order to give this defendant the benefit of the doubt, and to limit the extent of this discussion to the only essential, and glaring, flaw in counsel's pleading of this claim, it can be assumed, as counsel alleged but did not support with any evidence, that the purported witnesses (1) existed and (2) were available to testify at trial, (3) trial counsel was informed or should have known of their existence, and (4) they were willing to testify for defendant at trial (or may not have been as discussed shortly). As both cases cited by counsel, and countless others, make clear, a *PCRA* petitioner claiming ineffective assistance for failing to call a witness must demonstrate all of the five conditions set forth in *Nock* and *Stilley*. To claim that (5) the absence of those witnesses' purported testimony, being simply that they saw the codefendant with the gun prior to everyone involved, not including themselves, going downstairs where the assault occurred, prejudiced the defendant to the extent that he was denied a fair trial because it would have likely raised a reasonable doubt as to the veracity of the victim's testimony, and outweighed the probative value of all of the other evidence, and probably would have resulted in an opposite verdict, is the epitome of a leaping *non sequitur*. It is equally clear that counsel's failure to present that totally irrelevant, immaterial and demonstrably not exculpatory tidbit of information does not meet any of the three parts of the ineffective assistance of counsel test.

All twelve of appellant's claims allege ineffective assistance of counsel. "It is settled that the test for counsel ineffectiveness is the same under both the Pennsylvania and Federal Constitutions: it is the performance and prejudice test set forth in *Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." Commonwealth v. Gribble, 580 Pa. 647, 863 A.2d 455, 460 (2004)* (collecting cases). The contours of the inquiry are as follows:

> To better focus the *Strickland* analysis, this Court has applied the performance part of the test by looking both to the arguable merit of the claim lodged against counsel as well as the objective reasonableness of the path taken, or not taken, by counsel. *E.g.,* [*Commonwealth v. Bomar, 573 Pa. 426, 826 A.2d 831, 855 n. 19 (2003), cert. denied, 540 U.S. 1115, 124 S.Ct. 1053, 157 L.Ed.2d 906 (2003)*]. Thus, the constitutional ineffectiveness standard requires the defendant to rebut the presumption of professional

14

competence by demonstrating that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. (Michael) Pierce [567 Pa. 186], 786 A.2d 203, 213 (Pa.2001); Commonwealth v. Kimball [555 Pa. 299], 724 A.2d 326, 333 (Pa.1999).* A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *(Michael) Pierce, 786 A.2d at 221–23; see also Commonwealth v. Albrecht [554 Pa. 31], 720 A.2d 693, 701 (Pa.1998)* ("If it is clear that Appellant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met.").

*Commonwealth v. Spotz, 582 Pa. 207, 870 A.2d 822, 829–30 (2005), cert. denied, 546 U.S. 984, 126 S.Ct. 564, 163 L.Ed.2d 474 (2005).*[4] Respecting prejudice, "[a] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." *Commonwealth v. Collins, 598 Pa. 397, 957 A.2d 237, 244 (2008)* (citing *Strickland, 466 U.S. at 694, 104 S.Ct. 2052).*

4 As this Court has repeatedly noted, the *Pierce* and *Strickland* standards themselves are substantively coextensive. ...

*Commonwealth v. Ali, 608 Pa. 71, 10 A.3d 282, 291 (2010)* (citations in footnote omitted).

In its motion to dismiss the Commonwealth noted two additional interesting deficits to this claim, particularly with regard to whether the witnesses would actually have been willing to testify for the defendant. If they had, they would probably have subjected themselves to criminal liability because of the victim's testimony that they attempted to prevent him from escaping. In addition, the trial court extensively colloquied the defendant and his counsel as to whether the defendant's decision not to call any witnesses, as well as to not testify himself, was knowing and voluntary, to which they both agreed. Notes of Testimony, 6/5/2008, 152-154 & 6/6/2008, 4-10.

This Court has held that "a defendant who makes a knowing, voluntary, and intelligent decision concerning trial strategy will not later be heard to complain that trial counsel was ineffective on the basis of that decision." *Commonwealth v. Paddy, 569 Pa. 47, 800 A.2d 294, 316 (2002)* (citing *Commonwealth v. Abu–Jamal, 553 Pa. 485, 720 A.2d 79, 93 (1998)).* To do otherwise, the Court held, "would

15

allow a defendant to build into his case a ready-made ineffectiveness claim to be raised in the event of an adverse verdict." *Id.* In *Paddy*, the defendant complained of trial counsel's ineffectiveness for failing to call alibi witnesses. We held that "this ineffectiveness claim fails for the fundamental reason that Paddy agreed at trial to counsel's decision not to call the witnesses in question." *Id. at 315.* ...

*Commonwealth v. Rios*, 591 Pa. 583, 920 A.2d 790, 803 (2007), cert. denied, Rios v. Pennsylvania, 520 U.S. 1231, 117 S.Ct. 1825, 137 L.Ed.2d 1032 (1997). This claim thus clearly lacks merit, there being no possibility that the information the purported witnesses would have conveyed would have had any effect on the verdict whatsoever.

## B. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO FILE A MOTION THAT THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE

Equally trifling is counsel's attempt to characterize, and to demonstrate that, the state's evidence was "contradictory and inconsistent throughout the trial." He didn't even mention, let alone analyze, the truly relevant, credible and extremely inculpating evidence. He asserted that the Commonwealth's claim that the assault resulted from the previous argument about the twenty dollars was not credible because that argument ended when the woman who was with the defendant that night had told him that he and she had spent the twenty dollars earlier. That ignored the evidence that the defendant, during many of his and the victim's previous drug filled reveries, would always accuse him of taking any of his possessions that appeared to be missing, and the victim's testimony to the effect that, even after the woman had pointed out that fact, the victim decided to leave because the defendant still appeared threatening to him. Counsel tried to disparage the victim's claim that he was shot by the defendant by noting that he "admitted" on cross that the defendant did not have a gun when he picked him up and drove him to his house and that he did not see the defendant with a gun or a knife while they were in the basement, as if it were an impossibility for the defendant to have pulled out or picked up a gun and a knife after he deliberately placed himself behind the victim. Present counsel referred to it as a knife; it was

actually a samurai sword, a number of which were hung on the basement wall behind the sofa.

That theory also ignored the fact that the police found the gun, the spent shell casings and the

bloody sword in the basement.

Q. And you went downstairs voluntarily?
A. Yes, I did.
Q. And you didn't see a gun?
A. No.
Q. And you never saw him reach for any sword, did you?
A. No.
Q. Okay.
A. How could I? He was behind me.

N.T., 6/5/08, p. 76. Counsel's allegations that the victim's credibility was highly questionable

because he said that the two black males were also in the basement, the codefendant was the

victim's cousin (to insinuate that the victim was trying to protect him from culpability), the

defendant was handing the victim power tools when he was shot, and because he had used drugs

are grossly blatant distortions of his testimony.

Q. And your eyes worked good?
A. That's right.
Q. Okay.
   And, in fact, when he's handing you stuff, you're turning to face him, right?
And then you turn the other way so when you're facing him to take the tool, you
can see if he has a gun or a knife, can't you?
A. How could he have a gun and a knife and hand me a power tool at the same
time?
Q. That's exactly right. Good.
   So -- and as soon as you take this saw and turn to put it down like this, you feel
this something in your head, right?
A. No, that's not how it was.
   The first power tool was handed to me, I put down on -- to the right side.
Q. Yeah.
A. The second power tool was handed to me and I was looking straight ahead.
Q. Yeah.
A. It was on my lap. I never turned to put that one down. I never had a chance to.
I had it on my lap. It was heavy. I let it sit on my lap. Within a few minutes later
that's when I felt pressure [which is how he had earlier described his being shot]
and I couldn't hear nothing.
Q. Wait a minute.
   You weren't going to use this power saw?

17

A. What the hell was I going to use it for? It ain't mine.

Q. And you sure as hell -- you sure as heck weren't going to use it for anything on your lap, were you?

A. Nope.

Q. No.

So you had no reason to keep it in your lap, did you?

A. I did at that point because I was very tired. I was very out of it. And it was very heavy.

Q. You were tired?

A. Yeah, I was tired. I was walking the streets. What do you expect?

Q. So you were sitting there with those power tools looking straight ahead and you never saw anybody with any weapon, right?

A. No. It would be remarculous (sic) [*sic*] if I could see the gun behind my left ear getting shot.

Id., pp. 77-78. Counsel's assertions that the victim said that he had just gotten high on "powerful hallucinogens including crack, pills and methamphetamines" prior to the incident, citing pages 98 through 101 of the Notes, are simply not true. The victim did testify that he and the defendant had gotten high together on previous occasions, including on the night of the previous argument, and that he had used drugs at some unspecified point on the day before the morning of the assault, and he did say that the defendant had invited him to his house to get high that night, but there was no testimony as to what drugs he had taken that day or when, or him or anyone else getting high at the defendant's house before he was shot. (Incidentally, the defendant did not know he had been stabbed until the hospital staff found the stab wound on his back.) It was the court's follow-up after sustaining objections to questions about his drug use in general (which objections form the bases of the claim of appellate counsel's alleged failings discussed below) that elicited the reference to what counsel described as hallucinogens, not what he used that day. The victim did not specifically mention any hallucinogenic drugs, just methamphetamines and cocaine, which are not hallucinogens.

THE COURT: Back in January of '05, when this happened, when you say "getting high," what are we talking about? Are we talking about marijuana? Are we talking about martinis? Are we talking --

THE WITNESS: We're talking about a lot of things. It will start from crack and it

18

ends up to being pills and meth and --
THE COURT: Okay. All right.

N.T., 6/5/08, pp. 100-01. The assertion that the fact that the victim, whom he neglected to mention was homeless and at least once could not be located for this case, did not show up for the codefendant's trial casts a doubt on the reliability of his testimony is pitifully absurd. Again, counsel completely ignored the truly relevant facts, such as that on the night of the incident there was a tarp covering the defendant's basement floor that had not been there when the victim was in the basement on previous occasions and which the investigating police officers later found rolled up and stuck in a corner with blood on it. Counsel acknowledged that a reviewing court must view all the evidence in the light most favorable to the verdict winner, though the Court in the case he cited for that proposition was referring to the evaluation of an insufficiency of the evidence claim. By his only having referred to the bits and pieces of the evidence, and to evidence that existed only in his imagination, counsel specifically requested the trial, and now this Court to only view the evidence that he misguidedly said he believed is unfavorable to the Commonwealth's case and, by not even mentioning any of it that did support the verdict, to completely ignore the truly relevant and compelling incriminating evidence. The case he cited for that acknowledgement did also include a description of the criteria to be employed in evaluating a weight claim.

> Appellant first argues that the evidence was insufficient to support the conviction for first degree murder because appellant did not possess the specific intent to kill the victim. ... The standard for reviewing the sufficiency of the evidence is whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to support all the elements of the offenses beyond a reasonable doubt. *Commonwealth v. Carpenter*, 511 Pa. 429, 435, 515 A.2d 531, 533-34 (1986). After a review of the record, we find that the evidence is sufficient to support appellant's convictions.
>                                 * * *
> Appellant's second claim is that the verdict was against the weight of the evidence. The weight of the evidence is exclusively for the finder of fact who is

19

free to believe all, none or some of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Jackson, 506 Pa. 469, 475, 485 A.2d 1102, 1104 (1984); Commonwealth v. Dreibelbis, 493 Pa. 466, 469, 426 A.2d 1111, 1113 (1981).* Furthermore, an appellate court is barred from substituting its judgment for that of the finder of fact. *Commonwealth v. Pronkoskie, 498 Pa. 245, 251, 445 A.2d 1203, 1206 (1982).* Thus, we may reverse the decision of the lower court only when the verdict is so contrary to the evidence as to shock the conscience. *Commonwealth v. Walker, 540 Pa. 80, 93-95, 656 A.2d 90, 97, cert. denied, 516 U.S. 854, 116 S.Ct. 156, 133 L.Ed.2d 100 (1995), citing Commonwealth v. Whitney, 511 Pa. 232, 239, 512 A.2d 1152, 1155 (1986).*

Appellant does not specify why the verdict is against the weight of the evidence other than to point out how the testimony elicited from his witnesses contradicted the testimony of the Commonwealth witnesses. The jury's decision to believe the testimony of four Commonwealth eyewitnesses that they saw appellant shoot the victim instead of the testimony of five defense witnesses who came out of their homes *after* hearing shots that they did not recall seeing appellant on the street does not shock the conscience. Therefore, this claim fails to provide a basis for relief.

*Commonwealth v. Johnson, 542 Pa. 384, 668 A.2d 97, 100, 101–02 (1995), cert. denied, Johnson v. Pennsylvania, 519 U.S. 827, 117 S.Ct. 90, 136 L.Ed.2d 46 (1996).* Counsel here seems to have been unaware that his client did not present any evidence and there was nothing, therefore, to refute, or even weigh against, the Commonwealth's. That the evidence was of more than sufficient weight was made abundantly clear by the trial court's previous description of it.

## C. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO PROPERLY ARGUE THE RULE 600 VIOLATION.

Despite being so labeled in the memo, counsel's argument, though very verbose as far as the general principles governing the purpose and application of *Rule 600* and trial and appellate courts' evaluation of that application, is simply that defendant's appellate counsel failed to argue that the Commonwealth's appeal from the trial court's refusal to allow it to use the victim's preliminary hearing testimony was frivolous and was brought solely "for delaying the case." Counsel seemed to be unaware that this Court, in the direct appeal, specifically agreed with the trial court's finding that, despite defendant's argument to the contrary, the Commonwealth

20

"extended 'prodigious efforts'" in trying to locate the victim and the time spent appealing the ruling could not be considered in determining whether the Commonwealth failed to exercise due diligence, which is just another way of saying that the appeal was not frivolous nor filed solely for the purpose of delay.

> (a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.
>
> * * *
>
> (1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

*Pa.R.Crim.P. 600(A)(2) & (C)*. Counsel's assertions that "The Superior Court ruled that this claim about the preliminary hearing transcripts was not presented at the speedy trial hearing[,] the issue of whether the Commonwealth appeal [*sic*] was frivolous and thus showed lack [*sic*] of due diligence could not be raised in that trial counsel never argued this issue [and] appellate counsel never raised [it] in the 1925(b) Statement" just didn't make any sense. It is only with difficulty that the court could discern that counsel appears to have argued that appellate counsel failed to argue that the appeal was frivolous, which is simply not true. "(a) General rule.--To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following: ... (3) That the allegation of error has not been previously litigated or waived." *42 Pa.C.S. § 9543*. "For purposes of this subchapter, an issue has been previously litigated if: ... (2) the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue ..." *42 Pa.C.S. § 9544(a)*. Counsel did not discuss, or even mention, what arguments trial or appellate counsel did present at the hearing and in the appeal and the court is not required to scour the record and do it for him in an attempt to ascertain whether or not counsel reasonably covered the relevant considerations. Since trial counsel's argument takes up thirteen pages of the transcript of the first day of trial the

21

court can justifiably employ the assumption that counsel offered a competent effort.

> An order denying a motion for a continuance to secure the presence of a necessary witness has the same practical effect of an order suppressing or excluding evidence. We believe that the filing of a *Dugger* [cited and discussed *infra*] certification [that an interlocutory ruling effectively puts a litigant out of court] is a sufficient safeguard to prevent the Commonwealth from filing appeals to delay a trial when a court has denied a motion to continue.

*Commonwealth v. Matis*, 551 Pa. 220, 710 A.2d 12, 18 (1998). Counsel also ignored the fact that, in arguing the *R. 600* motion at trial and on appeal, as noted by the trial court in its opinion in the direct appeal, both parties agreed that the duration of the Commonwealth's attempts to use the victim's preliminary hearing testimony and the appeal of the court's refusal to allow it to do so were the only periods of delay attributable to it which was ready to commence trial each other time it was delayed. "'In evaluating *Rule 600* issues, our standard of review of a trial court's decision is whether the trial court abused its discretion.' *Commonwealth v. Hunt*, 858 A.2d 1234, 1238 (Pa.Super.2004) (en banc)." *Commonwealth v. (Malik) Brown*, 2005 PA Super 180, 875 A.2d 1128, 1141 (2005), *appeal denied*, 586 Pa. 734, 891 A.2d 729 (2005). In the direct appeal here, as did the Court in *Brown*, this Court found no such abuse on the part of the trial court. "Based upon the foregoing, we hold the court erred in dismissing the case against Appellee, where the Commonwealth exercised due diligence and did not engage in any misconduct designed to evade Appellee's fundamental speedy trial rights." *Id. at 1141*.

> The classic case of an interlocutory order appealable by the Commonwealth as of right by such certification is one granting a defense motion to suppress evidence. *E.g., Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382, 386 *(1985)*. The certification by an officer of the Court guards against frivolous appeals or appeals intended solely for delay. *Id*. This Court has held that the Commonwealth's certification is "not contestable" and "in and of itself, precipitates and authorizes the appeal." *Id*. *See also Commonwealth v. Matis*, 551 Pa. 220, 710 A.2d 12, 17 (1998) (same).[17] This Court has since made clear that the Commonwealth may appeal a pre-trial ruling on a motion in limine which excludes Commonwealth evidence in the same manner that it may appeal an adverse ruling on a suppression motion—*i.e.*, by certification that the order has the effect of terminating or substantially handicapping the prosecution. *Matis*,

22

*supra; Commonwealth v. Gordon, 543 Pa. 513, 673 A.2d 866 (1996); Commonwealth v. Cohen, 529 Pa. 552, 605 A.2d 1212 (1992)* (plurality opinion).

> 17 The *Dugger* Court also noted that this Court had defined "substantial handicap" as existing whenever the Commonwealth is denied the use of *all* [its] evidence. *486 A.2d at 386* (emphasis [in] original). *See also, Commonwealth v. Bosurgi, 411 Pa. 56, 190 A.2d 304, 308 (1063)* (same).

*Commonwealth v. Boczkowski, 577 Pa. 421, 846 A.2d 75, 82-83, 87 (2004).* It is beyond dispute that precluding the Commonwealth from introducing the complaining, and only, eyewitness's testimony would have terminated or substantially handicapped the prosecution. Since both trial and appellate counsel raised and argued the issue, and present counsel has not pointed to a viable alternative, this claim must fail even if he did. "Appellant cannot obtain post conviction review of claims previously litigated on appeal by presenting new theories of relief to support the previously litigated claims. *Commonwealth v. Stokes, 576 Pa. 299, 304-05, 839 A.2d 226, 229 (2003)." Commonwealth v. (John Wesley) Brown, 582 Pa. 461, 872 A.2d 1139, 1145 (2005).* In addition, counsel again ignored a pertinent fact: the defendant was given the benefit of the rule by being released and permitted to go to work with the appropriate conditions. *R. 600(D)(2).* This claim was previously litigated and found to be completely lacking in merit.

## D. APPELLATE COUNSEL WAS INEFFECTIVE IN REPRESENTATION

This claim was that defendant's appellate counsel, in his brief in the direct appeal, in presenting the issue that the trial court erred in precluding trial counsel from delving into the "general pervasiveness" of the victim/witness's drug use, limited his argument to only two questions to which the court sustained objections, and "Thus the Superior Court could not rule on whether the court erred in precluding the Petitioner from establishing the full extent of the complainant's drug addiction and its effect on his ability to recall and relate the events of the evening in question as the actual argument by counsel challenged only the above rulings." By

23

that assertion, *PCRA* counsel had raised his affectation for speciousness to a high art form. In the first case, both the trial court and the Superior Court did examine the entire record and found that the defense was not precluded from fully exploring the victim's prior and ongoing drug use, including that on the day in question and whether it may have affected his ability to recall and relate the events, in its cross examination. The only reason appellate counsel limited his argument to the two questions to which present counsel referred, which were, by the way, posed during recross examination, is because they were the only two questions about the victim's drug use to which objections were sustained. There were no objections to defense counsel having fully explored the victim's extensive drug use on cross. Present counsel's argument was a request that the court ignore pages 74 to 76 of the trial transcript for June 5th where that exploration appears. Because of the fact that the victim's ongoing drug use was thoroughly established, the court was correct in sustaining the objections to the two questions on recross, "You still get high?" and "Are you due to get high now?" The former had been asked and answered and the latter was irrelevant, as well as lacking any foundation or probative value and inappropriately prejudicial. This phony issue deserves no further comment. Wherefore, for all the above reasons, the court's dismissal of the defendant's PCRA petition without conducting an evidentiary hearing was fully justified by the record and should be affirmed.

BY THE COURT:

WILLIAM MAZZOLA, J.

24